UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN COSTELLO, | ) |
| | ) 02 Civ. 5870 (RCC) |
| Plaintiff, | ) |
| | ) MEMORANDUM |
| - against - | ) & ORDER |
| | ) |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**RICHARD CONWAY CASEY, United States District Judge:**

International Business Machines Corporation ("IBM" or "Defendant") filed this motion for sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent power, alleging that John Costello ("Plaintiff") and his federal-court counsel ("Plaintiff's Counsel") (1) deliberately instituted this lawsuit against IBM knowing that it was barred by collateral estoppel in light of a prior state-court adjudication, and (2) repeatedly and deliberately failed to produce requested documents from the prior state-court proceeding in bad faith. For the following reasons, Defendant's motion for sanctions is **DENIED**.

## I. BACKGROUND

### A. Plaintiff's Employment at IBM

Plaintiff began working for IBM in December 1967, and thereafter worked at IBM's offices in Indiana, New York, and Texas until 1996. From 1996 until his separation from the company in late 2000, Plaintiff worked at IBM's Research Triangle Park Facility in Durham, North Carolina, where he held the position of Operations Manager of Workstation Products for North America. In October 2000, Plaintiff took a medical leave with the alleged intention to return to work in December 2000. Prior to his return to work, however, Plaintiff's employment ended. Thereafter,

Defendant maintained that Plaintiff left voluntarily (i.e., retired), whereas Plaintiff argued that he was involuntarily retired (i.e., fired).

B.  **Plaintiff's Divorce Proceedings**

In May 2000, Plaintiff's wife filed for divorce. In the summer of 2001, a trial was held before Justice John W. Sweeny, Jr. ("Justice Sweeny") in the Supreme Court of New York, Putnam County to determine the amount of spousal maintenance and child support to be paid as well as the distribution of wealth and property. Throughout the divorce proceedings, Plaintiff argued for a reduction of his maintenance and support payments based on his alleged termination from IBM. At the conclusion of the trial, however, Justice Sweeny ruled, in essence, that Plaintiff was not terminated from IBM but rather had retired, stating from the bench:

> [On] the issue of Mr. Costello's leaving his employment from IBM. Was he fired? Did he retire? . . . [B]efore we started this trial . . . I made it very clear I wanted something in writing from IBM, or I wanted somebody from IBM here to tell me, very simple thing to do, that Mr. Costello, in fact, was fired or terminated or whatever other adverb we would use to describe his leaving employment. I never got it. What I got was testimony from Mr. Costello, which, quite frankly, I found to be self-serving and unsupported by the record. As such, I feel that his employment from IBM was not other than his own volition; therefore, I will impute to him income of $80,000 a year, which he is capable of making for the purposes of any financial issues to be resolved in this case, including, but not limited to, the issue of maintenance.

(Divorce Tr. Sept. 7, 2001 2:18 - 3:16.)[1] In April 2003, the New York State Appellate Division, Second Department ("Appellate Division") affirmed Justice Sweeny's decision. Costello v. Costello, 757 N.Y.S.2d 588, 589-90 (N.Y. App. Div. 2003) (holding that because "the trial court did not find credible [Plaintiff's] testimony that he was wrongly terminated from his employment as

---

[1] There is no direct mention of Justice Sweeny's determination regarding Plaintiff's employment with IBM in the Judgment of Divorce issued in March 2002 or in any other written order or opinion of the state court that was presented to this Court as part of the instant motion.

2

opposed to having voluntarily sought retirement, the court providently exercised its discretion in imputing income to [Plaintiff] higher than that claimed" for purposes of calculating a spousal-maintenance award to Plaintiff's ex-wife).

### C. Plaintiff's Federal District Court Proceeding

In July 2002, Plaintiff filed the instant action, alleging that he was terminated from IBM in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("AEDA"), the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), and New York State Human Rights Law, 18 N.Y. Exec. Law § 296 et seq. (McKinney 2001).

During discovery, Defendant asked Plaintiff to produce "[a]ll documents concerning [Plaintiff's] divorce proceedings . . . in the New York State Supreme Court for Putnam County." (Def.'s Doc. Produc. Req., Oct. 3, 2002, ¶ 12.) Plaintiff produced some documents but objected to Defendant's request as "overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence." (Pl.'s Supp. Resp., Jan. 9, 2003, ¶ 12.) Defendant sought the Court's intervention. On January 22, 2003, the Court referred the case to Magistrate Judge Henry B. Pitman to oversee discovery. On February 4, 2003, Judge Pitman heard oral arguments by the parties as to the relevance of Plaintiff's divorce documents and the breadth of Defendant's discovery request. By order dated February 5, 2003, Judge Pitman directed Plaintiff to produce, by February 10, 2003, "only . . . those documents [responsive to Defendant's request] that post-date November 30, 2000 to the extent that they relate to [P]laintiff's employment with [and] retirement from IBM." (Discovery Order, Feb. 5, 2003, at 1-2.)

On February 6, 2003—the day after Judge Pitman issued his discovery order—Plaintiff executed a records release to the Supreme Court of New York, Putnam County authorizing Defendant to obtain the divorce documents. Defendant did not then object to that method of

production, the same production procedure that Plaintiff had previously used for his unemployment and tax records. By late March 2003, however, Defendant was not able to obtain the divorce documents from the state court because the files were under review by the Appellate Division, which would not issue a decision on the appeal for another month. See Costello, 757 N.Y.S.2d 588 (affirming Justice Sweeny's finding in April 2003).

By letter dated March 19, 2003, Defendant requested that Plaintiff obtain the divorce documents directly from his divorce counsel because they were unavailable at that time from the state court. Plaintiff's Counsel allege that, in response to this letter, Plaintiff "acted quickly and . . . [went] to his divorce attorneys to begin [personally] photocopying the many boxes of documents relating to his divorce proceedings." (Pl.'s Opp'n Br. at 4; see also id. at 4 n.2 (noting that Plaintiff had two divorce attorneys, trial and appellate, and that "the files constituted hundreds of pages of documents in several different boxes" located at two different offices).) On March 27, 2003, Defendant issued subpoenas, which were arguably beyond the scope of Judge Pitman's Discovery Order, to Plaintiff's ex-wife and her divorce counsel to obtain the divorce documents.

Upon completion of discovery, Defendant moved for summary judgment, arguing that the issue of Plaintiff's retirement had been litigated in the prior state-court divorce action and was therefore precluded by collateral estoppel. On January 15, 2004, Judge Duffy granted Defendant's summary judgment motion and dismissed Plaintiff's claims, holding that Justice Sweeny's determination in the state-court divorce proceeding that Plaintiff retired collaterally estopped Plaintiff from arguing in the instant federal-court employment litigation that Plaintiff was fired in violation of federal law. Costello v. Int'l Bus. Machs. Corp., No. 02 Civ. 5870 (RCC), 2004 WL 97688, at *4 (S.D.N.Y. Jan. 20, 2004).

Defendant now moves for sanctions, alleging that Plaintiff and his counsel (1) deliberately instituted this lawsuit against IBM knowing that it was barred by collateral estoppel in light of Judge Sweeny's prior determination, and (2) repeatedly and deliberately failed to produce requested documents from the prior state-court divorce proceeding in bad faith. Plaintiff and his counsel counter that (1) they had a good-faith basis to believe that Plaintiff's employment claims were not collaterally estopped based upon the available evidence and case law, and (2) they did not impede Defendant from obtaining the requested divorce documents.

## II.  DISCUSSION

Defendant moves for sanctions pursuant to both 28 U.S.C. § 1927 and the Court's inherent power. Under § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Further, a district court has the "inherent power to impose attorney's fees as a sanction for bad-faith conduct" on any attorney or party who "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 50 (1991); Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir.1986).[2]

In practice, "the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts . . . [whereas] an award made under the court's inherent power may be made against an attorney, a party, or both." Oliveri, 803

---

[2] "[T]he inherent power of the district court also includes the power to . . . sanctions attorneys for . . . violations of court orders or other conduct which interferes with the court's power to manage its calendar and the courtroom without a finding of bad faith." United States v. Seltzer, 227 F.3d 36, 42 (2d Cir. 2001).

F.2d at 1273; see also Schlaifer Nance & Co. v. Estate of Andy Warhol, 194 F.3d 323, 336 (2d Cir.1999) (reversing a district court's imposition of sanctions made pursuant to both § 1927 and the court's inherent power); Greenberg v. Chrust, 297 F. Supp. 2d 699, 703 (S.D.N.Y. 2004) ("Sanctions under § 1927 can be imposed exclusively against the offending attorneys, not their clients."). A court must, however, "exercise caution in invoking its inherent power," as it is only in cases in which the statute is not "up to the task, [that] the court may safely rely on its inherent power." See Chambers, 501 U.S. at 50. And sanctions under § 1927 are themselves "not to be taken lightly." Vishipco Line v. Charles Schwab & Co., Nos. 02 Civ. 7823 (SHS) et al., 2003 WL 1345229, at *10 (S.D.N.Y. Mar. 19, 2003); see also West Virginia v. Chas. Pfizer & Co., 440 F.2d 1079, 1092 (2d Cir. 1971) (noting that it is "highly unusual" to award sanctions under § 1927).

The "touchstone" of an award under either § 1927 or the court's inherent power is a "clear showing" of "bad faith." See, e.g., Schlaifer Nance, 194 F.3d at 336 (holding that, to impose sanctions, a district court "must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay"); Shafii v. British Airways, PLC, 83 F.3d 566, 571 (2d Cir. 1996) (noting that § 1927 authorizes the imposition of sanctions only when "there is a clear showing of bad faith on the part of an attorney"); United States v. Int'l Bhd. of Teamsters, 948 F.2d 1338, 1345 (2d Cir. 1991) (holding that "bad faith" is the "touchstone" of an award under § 1927); Oliveri, 803 F.2d at 1273 (holding that sanctions may be imposed under the court's inherent power where there is "clear evidence that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes") (internal quotation marks and citation omitted); Wood v. Brouse U.S.A., Inc., 149 F.R.D. 44, 48 (S.D.N.Y. 1993) ("Bad faith is the key element in the imposition of § 1927 sanctions.").

"Bad faith" may be inferred, however, "only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Shafii, 83 F.3d at 571 (emphasis added); see also Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 79 (2d Cir. 2000) (holding that, to impose sanctions under § 1927, a district court "must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes" (emphasis added) (quoting Agee v. Paramount Communications, Inc., 114 F.3d 395, 398 (2d Cir. 1997)); Schlaifer Nance, 194 F.3d at 336 (focusing its analysis under both the court's inherent power and § 1927 on "colorability" and "bad faith"). A claim is colorable, however, "when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." Nemeroff v. Abelson, 620 F.2d 339, 348 (2d Cir. 1980) (per curiam); see also Schlaifer Nance, 194 F.3d at 340 (reversing the district court's imposition of sanctions under both its inherent power and § 1927 where there was "no evidence to suggest that [counsel] had utterly no basis for their subjective belief in the merits of their case").

### A. There is No Clear Showing that this Action was Brought in Bad Faith

Defendant asserts that Plaintiff and his counsel "instituted a lawsuit that they knew Plaintiff could not possibly win because the issue of his 'involuntary retirement' had already been litigated and decided adversely to him in the state court." (Def. Br. at 9.) The Court finds, however, that there was a colorable basis for Plaintiff to bring this employment action, that it was reasonable for Plaintiff's Counsel to believe that the action was not barred by collateral estoppel, and that Defendant has not made a clear showing that Plaintiff or his counsel brought this action in bad faith.

Plaintiff's Counsel, who did not represent Plaintiff in the divorce proceedings, allege that "[they] had no reason to know that [the divorce] could impact [Plaintiff's] employment claims" (Pl.'s Opp'n at 2), that "[Plaintiff] did not realize that his divorce case could impact his employment

7

case" (id.), and that, when they filed this action in July 2002, they were unaware of any determination made in the divorce proceedings with respect to Plaintiff's employment with IBM (see Gold Decl. ¶ 5, Ginsburg Decl. ¶ 5). Plaintiff's Counsel further allege that when Defendant raised the issue of collateral estoppel in March 2003, they reviewed Justice Sweeny's decision and concluded that Plaintiff's claims were not necessarily barred. (See Ginsburg Decl. ¶¶ 6-7; see also Pl.'s Opp'n Mem. at 7-8 ("[I]t seemed . . . [that] Justice Sweeny had not had a full or adequate record to decide whether [Plaintiff] had been involuntarily or voluntarily retired.").)

Although Plaintiff's claims were ultimately deemed barred by this Court and Plaintiff lost the motion for summary judgment, Plaintiff's Counsel made a colorable, non-frivolous legal argument that collateral estoppel did not bar Plaintiff's ADEA and FMLA claims in light of the limited record on the issue of Plaintiff's employment with IBM that was before Justice Sweeny. Plaintiff's Counsel alleges, for example, that "the documentary and testimonial evidence [that Plaintiff's Counsel] uncovered in the employment case . . . was never presented to Justice Sweeny," including evidence that Plaintiff's supervisor at IBM "had age animus against Plaintiff." (Pl.'s Opp'n Mem. at 10, 14.) It was therefore reasonable for Plaintiff's Counsel to argue that Justice Sweeny's ruling was made for the purpose of making an award of maintenance to Plaintiff's ex-wife under matrimonial law, and was not based on evidence about Plaintiff's former employment with Defendant, which Justice Sweeny makes clear was devoid from the record before his court.

Recognizing that "collateral estoppel is a flexible doctrine which can never be rigidly or mechanically applied," Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 732 (2d Cir. 2001) (internal quotation marks and citation omitted), Plaintiff's arguments were not made vexatiously, or in bad faith. They simply did not carry the day. Plaintiff's Counsel allege that they "believed that [their] decision to oppose [D]efendant's collateral estoppel argument was a reasoned

one, made in good-faith, based on the case law" (Pl.'s Opp'n Mem. at 14), and because the legal and factual basis of Plaintiff's claim must be considered in light of Plaintiff's Counsel's subjective belief in the merits of Plaintiff's case, see Schlaifer Nance, 194 F.3d at 340; Nemeroff, 620 F.2d at 348, the Court takes Plaintiff and his counsel on their word.

Although district courts have imposed sanctions based on bad faith where plaintiffs knew or "should have known" that their claims were barred by collateral estoppel, the sanctions in the cases relied upon by Defendant were supported by multiple meritless proceedings that clearly indicated that the plaintiffs knew or should have known that their claims were barred. See, e.g., Vishipco Line, 2003 WL 1345229, at *11 (involving several lawsuits in this District alone and others elsewhere); Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, 202 F. Supp. 2d 126, 140 (S.D.N.Y. 2002) (imposing sanctions only after the plaintiff and his counsel attempted to "prosecute the same restated, reformulated and transactionally related claims originally decided" in three previous suits "based on the same facts and circumstances"). In Vishipco Line, for example, the district court imposed sanctions under § 1927 only after plaintiff's counsel filed "a multiplicity of lawsuits" as unrelated, despite that each was against the same parties over the same issues, and "inundated the courts with spurious default judgment motions, orders to show cause and requests to file motions" despite that the courts had put plaintiff's counsel on notice for over two years that "any further 'harassing or vexatious litigation . . . [would] be subject to sanction.'" See 2003 WL 1345229, at *11. It was this notice, coupled with "the utter lack of merit of [the plaintiff's] claims" and "the unreasonable and vexatious multiplicity of actions filed" that made it clear to the Vishipco Line court "that [plaintiff's counsel's] actions were 'undertaken for some improper purpose,' such as harassing defendants and delaying the inevitable [outcome of the case]." Id. (quoting Oliveri, 803 F.2d at 1273); see also id. at *9 (describing plaintiff's counsel as "a vexatious litigant who has

continued to file numerous repetitive, meritless and frivolous actions despite past warnings by several courts"). There was no such notice or multiplicity here.

Further undermining Defendant's contention that Plaintiff and his counsel brought this action in bad faith is that Plaintiff's Counsel took Plaintiff's employment case on a contingency basis, that is, the only money that Plaintiff's Counsel received from Plaintiff (because summary judgment was granted for Defendant) was money to reimburse Plaintiff's Counsel for expenses. (See Decl. Ginsburg ¶ 3.) The contingency-fee arrangement between Plaintiff and his counsel bolsters Plaintiff's Counsels' representation to the Court that they "agreed to represent [Plaintiff] in [this] employment case because [they] believed he had a meritorious action" (Pl.'s Opp'n Mem. at 7), and indicates that Plaintiff's Counsel had no reason to bring vexatious litigation, see Schlaifer Nance, 194 F.3d at 339 (noting that the contingency-fee arrangement in that case "indicate[d] the attorneys' subjective view that [their client's] claim was likely to produce a large recovery for [their client] that would sufficiently compensate them for their fees and their risk in taking the case").

Given these bases for Plaintiff's Counsels' subjective good faith in Plaintiff's action, and in the absence of any other evidence indicating an absence of a genuine belief in the validity of the action, the Court concludes that the record cannot support an inference of bad faith on the part of Plaintiff or his counsel to support an award of sanctions with respect to Defendant's collateral-estoppel argument under either § 1927 or the Court's inherent power.

### B. There is No Clear Showing of Bad Faith During Discovery

Defendant alleges that Plaintiff and his counsel "steadfastly attempted to avoid the disclosure of documents and information about Plaintiff's divorce case, in a transparent effort to avoid the preclusive effect of the state court's decision." (Def. Br. at 5; see also id. at 11 (alleging that Plaintiff took pains "to hide the determinative documents").) The Court finds, however, that Defendant has not made a clear showing that Plaintiff or his counsel acted in bad faith during discovery. Although sanctions may be imposed for attempts to thwart the progress of discovery, see, e.g., DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.2d 124, 136 (2d Cir. 1998) (sustaining an award of sanctions, pursuant to the court's inherent power, for "a pattern of behavior which could reasonably be construed as a bad faith effort to thwart plaintiff's discovery efforts"), the record does not indicate that Plaintiff and his counsel made anything other than good-faith efforts to comply with discovery, see supra Part I.C. Because the conduct of Plaintiff and his counsel during discovery is not so obviously the product of bad faith, the Court will not impose sanctions on this ground under either § 1927 or the Court's inherent power.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion for sanctions is **DENIED**. The Clerk of the Court is directed to close this case and to remove it from the Court's active docket.

So Ordered: New York, New York
August 16, 2006

Richard Conway Casey, U.S.D.J.

11